IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

vs.

KENNETH WILLIAM PURKEY,

Defendant.

CR 24-15-BLG-SPW

ORDER

On May 31, 2024, Defendant Kenneth William Purkey moved to dismiss the indictment charging him with being a prohibited person in possession of a firearm in violation of 18 U.S.C. § 922(g)(1) based on a three-judge panel's recent decision in *United States v. Duarte*, 101 F.4th 657 (9th Cir. 2024). (Doc. 44). In *Duarte*, the panel found 18 U.S.C. § 922(g)(1), which prohibits convicted felons from possessing firearms, was unconstitutional as applied to Duarte, a nonviolent felon. 101 F.4th at 691. Upon Purkey filing his motion, the Court held it in abeyance until the Ninth Circuit filed the mandate in *Duarte*. (Doc. 48).

After Purkey filed his motion and before any mandate was filed, the Ninth Circuit granted rehearing *en banc* in *Duarte* and vacated the panel's decision. 101 F.4th 657, *reh'g en banc granted, opinion vacated*, 108 F.4th 786 (9th Cir. Jul. 17, 2024) (mem.). As the panel's decision no longer had precedential value, the Court lifted the abeyance and ordered the Government to respond to Purkey's motion

within fourteen days of the order. (Doc. 53).

The Government responded on August 20, 2024, arguing that the Court should deny Purkey's motion because unless the *en banc* court adopts the reasoning of the three-judge panel's decision in *Duarte,* this Court should adhere to the Ninth Circuit's decision in *United States v. Vongxay*, which upheld § 922(g)(1) against a Second Amendment challenge. (Doc. 54 at 2 (citing 594 F.3d 111 (9th Cir. 2010)). As well as this Court's previous holding that § 922(g)(1) is consistent with the Nation's historical tradition of firearm regulation. (*Id.* (citing *Vongxay*, 594 F.3d at 1118; United *States v. Bulltail*, No. CR 22-86-BLG-SPW, 2023 WL 3947823 (D. Mont. June 12, 2023))). Further, the decision in *United States v. Rahimi*, affirms that *Vongxay* is reconcilable with the Supreme Court's recent Second Amendment jurisprudence. (*Id.* at 3 (citing 144 S. Ct. 1889 (2024)).

Purkey replied on September 4, 2024, arguing that the proper legal analysis in light of *Duarte* being placed under *en-banc* review is an adherence to current Supreme Court precedent, not *Vongxay*. (Doc. 59 at 3–4 (citing *Bruen v. New York State Rifle & Pistol Ass'n*, 597 U.S. 1 (2022); *Rahimi*, 144 S. Ct 1889)). Further, that the Government's response fails to provide a historical analogue to the Nation's tradition of firearm regulation that bars non-violent offenders from possessing a firearm. (*Id.* at 4).

For the following reasons, the Court denies Purkey's motion.

## I. Factual Background

On January 18, 2024, Purkey was charged with possession of a firearm or ammunition by a felon in violation of 18 U.S.C. § 922(g)(1). (Doc. 2). Purkey was stopped by Billings Police while driving a 2019 Nissan Pathfinder. (Doc. 21 at 2). Officer Steve Hallam approached the vehicle and saw a plastic bag protruding from Purkey's pocket. (*Id.*). Officer Hallam arrested Purkey for possession of drug paraphernalia. (*Id.*). Officer Hallam found insulin syringes and fentanyl pills on Purkey, and subsequently applied for and was granted a search warrant for Purkey's home. (*Id.*). Officers discovered three firearms at Purkey's home. (*Id.*). The next day Officer Hallam applied for and was granted a search warrant for Purkey's impounded vehicle. (*Id.*). Officers discovered drugs and a pistol in the vehicle. (*Id.*). Purkey was arrested and pleaded not guilty to the instant offense on February 22, 2024. (Doc. 5).

According to Purkey, he only has one previous felony, a drug possession conviction from 2009 in Florida. (Doc. 45 at 7). However, according to the Government's response, Purkey has five felony convictions from 2006 through 2012. The Government asserts that Purkey was convicted of felony possession of a controlled substance in 2006 and 2009 and convicted of felony habitual traffic offender violations in 2008, 2010, and 2012. (Doc. 54 at 5).

## II. Legal Standard

Rule 12(b)(1) of the Federal Rules of Criminal Procedure provides that a party may raise by pretrial motion any defense, objection, or request that the Court can determine without a trial on the merits. A pretrial motion is proper when it involves questions of law rather than fact. *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986). The Court has determined Purkey's motion is appropriate for pre-trial resolution because it solely involves a question of law.

## III. Analysis

The Second Amendment guarantees as follows: "A well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. In *Bruen*, the Supreme Court held that the Second Amendment protects an individual's right to carry a handgun for self-defense outside the home and rejected the means-end scrutiny test that courts of appeals had been applying when assessing the constitutionality of firearms regulations. 597 U.S. at 19. Instead, the Court held that courts must apply "[t]he test that we set forth in *Heller*" and "assess whether modern firearms regulations are consistent with the Second Amendment's text and historical understanding." *Id.* at 26 (citing *District of Columbia v. Heller*, 554 U.S. 570 (2008)).

The "ever-evolving 'history-and-tradition' test outlined in *Bruen* and

modified" by the Court's decision earlier this year in *United States v. Rahimi* "requires a two-step analysis to determine whether a law complies with the Second Amendment." *United States v. Youngblood*, __ F. Supp. 3d__ 2024 WL 3449554, at *3 (D. Mont. 2024) (citing 602 U.S. __ , 144 S. Ct. 1889, 1926–27 (2024) (Jackson, J., concurring)). First, if "the Second Amendment's plain text covers an individual's conduct, the Constitution presumptively protects that conduct." *Bruen*, 597 U.S. at 24. Second, to regulate protected conduct, the government must show that its regulation "is consistent with the Nation's historical tradition of firearm regulation." *Id.* This historical analysis requires courts to pay close attention to "[w]hy and how the regulation burdens the right." *Rahimi*, 144 S. Ct. at 1898. In doing so, "[a] court must ascertain whether the new law is 'relevantly similar' to laws that our tradition is understood to permit, 'applying faithfully the balance struck by the founding generation to modern circumstances.'" *Id.* (quoting *Bruen*, 597 U.S. at 29); *see also Bruen*, 597 U.S. at 30 (requiring the government to "identify a well-established and representative historical *analogue*, not a historical *twin*.") (emphasis in original).

*A.* Vongxay *Governs*

Purkey argues that § 922(g)(1) is unconstitutional as applied to him because, under *Duarte*, the felon in possession statute is unconstitutional as applied to nonviolent offenders, and his felony conviction is a nonviolent offense. (Doc. 45 at

3–4). Purkey reasons that his conviction is a nonviolent offense because his only felony conviction is for drug possession, and there is no evidence that he used a firearm in the commission of the felony.[1] (*Id.* at 7).

The Government responds that Purkey cannot rely on *Duarte* because it no longer has binding precedential effect. (Doc. 54 at 2). Instead, the Government asserts that until the *en banc* court resolves *Duarte*, the Court should adhere to the ruling in *Vongxay*, which affirmed the constitutionality of § 922(g)(1) without distinguishing between nonviolent and violent felons. (*Id.* (citing 594 F.3d at 1118)). Purkey replied that the proper legal analysis in light of *Duarte* being placed under *en banc* review is not a return to *Vongxay*, but an adherence to the U.S. Supreme Court precedent in *Bruen* and *Rahimi*. (Doc. 59 at 3–4).

The Court agrees with the Government that the Court should adhere to *Vongxay*, not *Duarte*. "[A] decision that has been vacated has no precedential authority whatsoever." *Marley v. United States*, 567 F.3d 1030, 1038 (9th Cir. 2009) (internal citation omitted). An *en banc* panel of the Ninth Circuit vacated the three-judge panel's decision in *Duarte* when it granted the government's request for rehearing *en banc*. 108 F.4th 786. Thus, Purkey cannot rely on *Duarte*, and more specifically its distinction between the constitutionality of § 922(g)(1) as applied to

[1] According to the Government's response to the Motion to Dismiss, Purkey has five felony convictions from 2006 through 2012. (Doc. 54 at 5). The Government does not allege that any of these felony convictions were for violent offenses.

violent and nonviolent felons, in arguing for dismissal of the indictment.

Without *Duarte*, the precedent the Court must follow is *Vongxay*, not *Bruen,* as this Court, other judges in the District of Montana, and other district courts in the Ninth Circuit have repeatedly held before *Duarte* and after *Duarte* was vacated. *See, e.g., United States v. Page*, CR 23-06-H, 2023 WL 8702081, at *2 (D. Mont. Dec. 15, 2023) (collecting District of Montana and other Ninth Circuit district courts holding that *Vongxay* "remains binding authority after *Bruen*"); *United States v. Thomas*, 2:22-cr-0129, 2024 WL 3459059, at *1 (D. Nev. July 18, 2024) (applying *Vongxay* after *Duarte* was vacated); *United States v. Coleman*, CR-23-02363-001, 2024 WL 3890710, at *2 (D. Ariz. July 29, 2024), *report and recommendation adopted by* 2024 WL 3888700 (same). Applying *Vongxay*, those courts have held that § 922(g)(1) "passes constitutional scrutiny." *Page*, 2023 WL 8702081, at *2.

This Court joins those courts in upholding § 922(g)(1), as *Vongxay* is clear on the matter. 594 F.3d at 1116–17;[2] *see also United States v. Whitney*, No. 22-10326, 2024 WL 1429461, at *2 (9th Cir. Apr. 3, 2024), *petition for cert. docketed* (Aug.

[2] Importantly, *Vongxay* did not apply the means-end scrutiny struck down by *Bruen*. Rather, it analyzed whether the Second Amendment historically allowed for the regulation of the possession of firearms by felons. It held that "most scholars of the Second Amendment agree that the right to bear arms was 'inextricably … tied to' the concept of a 'virtuous citizen[ry]' that would protect society through 'defensive use of arms against criminals, oppressive officials, and foreign enemies alike,' and that 'the right to bear arms does not preclude laws disarming the unvirtuous citizens (i.e. criminals ….)." 594 F.3d at 1118 (quoting Don B. Kates, Jr. *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (1986); citing Glenn Harlan Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. 461, 480 (1995) (noting that felons "were excluded from the right to arms" because they were "deemed incapable of virtue.")).

26, 2024) ("The felon-in-possession statute, 18 U.S.C. § 922(g)(1) is facially constitutional."). *Vongxay* also is clear that there is no constitutional distinction between violent and nonviolent felons, undermining Purkey's claim that his nonviolent felony would exclude him from § 922(g)(1)'s prohibition. 594 F.3d at 1116–17; *see also United States v. Phillips*, 827 F.3d 1171, 1173–74 (9th Cir. 2016); *Coleman*, 2024 WL 3890710, at *2.

As such, Purkey's challenge fails under *Vongxay*.

*B.* Bruen *Analysis*

Purkey argues that *Bruen* should guide this Court's analysis and that under *Bruen* the Government must prove § 922(g)(1)'s application to non-violent offenders "is consistent with the Nation's historical tradition of firearm regulation." (Doc. 45 at 4–5). The Government maintains that the test established in *Bruen* is consistent with *Vongxay* and even if *Vongxay* does not control, § 922(g)(1) is presumptively constitutional as applied to Purkey under *Bruen*. (Doc. 54 at 4–5). The Court agrees.

Considering the first step of the *Bruen* test, both parties present arguments on whether Purkey's conduct is covered by the Second Amendment's plain text. The Government argues that *Bruen* made it clear that "the people" described in the Second Amendment is limited to "ordinary, law abiding, adult citizens." (*Id.* at 4 (citing *Bruen*, 597 U.S. at 3)). Purkey asserts that "the people" under *Heller* unambiguously refers to all members of the political community. (Doc. 59 at 4

(citing *Heller*, 554 U.S. at 580–81)). Purkey further argues that saying he is not part of "the people" under the Second Amendment is a dangerous argument that would empower the State to decide who are "ordinary, law-abiding, adult citizens" and if they are entitled to constitutional rights. (*Id.*).

No higher court has ruled on whether felons are included in the "people" covered by the Second Amendment. District courts in the Ninth Circuit seem to agree that, under *Heller* and *Bruen*, felons are not included because the right is limited to law-abiding citizens. *See United States v. Butts*, 637 F. Supp. 3d 1134, 1137–38 (D. Mont. 2022) (holding that the Second Amendment is not extended to felons based on *Bruen* and *Heller*'s repeated references to "law-abiding citizens" and statements that felon dispossession statutes are "presumptively lawful"); *United States v. Roberts*, 710 F. Supp. 3d 658, 675–76 & n.157 (D. Alaska 2024) (collecting cases holding the same).

In contrast, other courts apply a "rights-based analysis," which asserts that "all people have the right to keep and bear arms but that history and tradition support Congress's power to strip certain groups of that right."[3] *Roberts*, 710 F. Supp. 3d

[3] *Duarte* adopted the rights-based approach, holding that "the people" means "all Americans," not a "unspecified subset" of people. 101 F.4th at 671 (quoting *Heller*, 554 U.S. at 580–81); *see also Range*, 69 F.4th at 103 (refusing to limit "the people" covered by the Second Amendment to "law-abiding, responsible citizens" and holding that the defendant was covered by the Second Amendment despite his previous false statement felony conviction); *Youngblood*, 2024 WL 3449554, at *4 (relying on *Duarte* before it was vacated in holding that that a defendant charged under § 922(g)(8) is covered by the Second Amendment's plain text because he is "an American citizen who possessed arms in common use."). Again, as *Duarte* is no longer good law, the Court

at 675 (quoting *Kanter v. Barr*, 919 F.3d 437, 452 (7th Cir. 2019) (J. Barrett, dissenting)); *see also United States v. Montes*, No. 1:23-cr-00182-1, 2024 WL 3904631, at *4 (N.D. Ill. Aug. 22, 2024) (holding that felons are within the "people" covered by the Second Amendment because *Heller* and *Bruen*'s discussion of law-abiding citizens' Second Amendment rights did not decide the question of the scope of the right and because "the people" covered by other constitutional rights only sometimes excludes felons). As the matter is unresolved by the Ninth Circuit, the Court will assume without deciding that the first step is satisfied. *See Roberts*, 710 F. Supp. 3d at 676–77 ("Given these disparate approaches to determining whether an individual's conduct is plainly covered by the Second Amendment, the Court assumes that the Second Amendment's plain text covers Roberts' conduct[.]").

Moving to the second step, the Court finds that historical analogues for the prohibition on the possession of weapons by both nonviolent and violent felons exist and are well documented in the courts. *See Medina v. Whitaker*, 913 F.2d 152, 158 (D.C. Cir. 2019) (discussing the evidence of the "tradition and history" that demonstrates that felons, including "non-dangerous" felons, do not have a right to bear arms under the Second Amendment); *United States v. Ramos*, 2:21-cr-00395, 2022 WL 17491967, at *4–*5 (C.D. Cal. Aug. 5, 2022) (discussing laws in existence at the founding that provide representative analogues to the felon in possession

---

is not bound to apply the rights-based approach.

statute). Most of the Founding Era laws cited by courts restricted the possession of firearms by unvirtuous persons, which included felons who committed nonviolent crimes. *Medina*, 913 F.3d at 158–59 (describing how nonviolent crimes such as forgery and horse theft were felony crimes at the time of the Second Amendment ratification); *United States v. Yancey*, 621 F.3d 681, 684–85 (7th Cir. 2010) ("[M]ost scholars of the Second Amendment agree that the right to bear arms was tied to the concept of a virtuous citizenry and that, accordingly, the government could disarm unvirtuous citizens." (cleaned up)); *Ramos*, 2022 WL 17491967, at *4 (discussing Founding Era laws that allowed for the dispossession of firearms from unvirtuous persons, which included common law felons).

This conclusion is affirmed by the Court's decisions in *Heller*, *McDonald*, *Bruen*, and *Rahimi*. In *Heller*, the Court wrote that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons ...." 554 U.S. at 626. The Court considered this measure, among others, "presumptively lawful." *Id.* at 627 n.26. Two years later, in *McDonald*, the Court "repeat[ed] [its] assurances" that felon dispossession laws remain valid. *McDonald v. City of Chicago*, 561 U.S. 742, 786 (2010). Then, in *Bruen*, the majority stated that its holding "was in keeping with *Heller*" and repeatedly used the term "law-abiding citizen" in reference to the scope of an individual's Second Amendment rights. *See, e.g.*, 597 U.S. at 9, 29, 31, 38, 60, 70. In a concurring opinion in *Bruen*,

Justice Kavanaugh, joined by the Chief Justice, "underscore[d]" that "the Second Amendment allows a 'variety' of gun regulations," and that nothing in the Court's opinion "'should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill[.]'" *Id.* at 81 (quoting *Heller*, 554 U.S. at 626 n.26). Finally, the Chief Justice in the *Rahimi* majority once again affirmed that "many ... prohibitions, like those on the possession of firearms by 'felons and the mentally ill,' are 'presumptively lawful.'" 144 S. Ct. at 1902; *see also United States v. Morales*, No. 24-cr-84, 2024 WL 3345982, at *2 (S.D.N.Y. July 8, 2024) (citing *Rahimi*, 144 S. Ct. at 1901) (holding that the *Rahimi* majority's "discussion of the long history of firearm regulations prohibiting dangerous persons from possessing arms aligns with the conclusion of the courts above: that § 922(g)(1), limited as it is to adjudicated felons, is consistent with the nation's historical tradition of firearm regulation."). In none of these cases does the Court distinguish between nonviolent and violent felons.

Accordingly, the weight of both the historical evidence and Supreme Court precedent demonstrates the constitutionality of § 922(g)(1) as applied to Purkey under the *Bruen* framework.

## IV. Conclusion

IT IS SO ORDERED that Defendant Kenneth William Purkey's Motion to Dismiss (Doc. 44) is DENIED.

DATED this 3rd day of October, 2024.

Susan P. Watters

SUSAN P. WATTERS
United States District Judge